IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PIT VIPER, LLC,<br><br>        Plaintiff,<br><br>v.<br><br>CEMOTO LTD, et al.<br><br>        Defendants. | Case No. 23-cv-14761<br><br>**Judge Sara L. Ellis**<br><br>**Magistrate Judge Gabriel A. Fuentes** |

## DECLARATION OF DAVEN BRODESS

I, Daven Brodess, declare as follows:

1. I am a Managing Partner and Co-Founder of DTC Retail LLC ("DTC Retail"), an Amazon selling agency. I have been in this role since 2017. DTC Retail is a full-service e-commerce consulting agency that works with brands and manufacturers to grow their sales and profit on Amazon both in the United States and globally. We specialize in building traffic and converting traffic to revenue by leveraging our industry experience and close relationships with clients into holistic strategies, practical insights, and efficient execution. Our team executes and optimizes advertising, marketing, logistics, brand management, etc. to maximize Amazon sellers' market penetration and sales.

2. Prior to founding DTC Retail, I spent over four years working at Amazon in a variety of roles including management, marketing, and supply chain roles and consulting with brands to grow their businesses online. At Amazon, I gained significant experience and knowledge in buying and sourcing products, sales and operations planning, managing inventory, product advertising and marketing, product listing creation and optimization, Amazon customer experience, and strategic branding to increase product discoverability.

1

3. I earned a Master of Business Administration degree from the University of Western Australia, and a Bachelor of Arts degree in economics from the University of Notre Dame.

4. I have previously served as an expert witness during *Wham-O-Holding, Ltd. v. The Partnerships, et. al*, No. 20-cv-04196 (N.D. Ill. July 16, 2024) in March of 2023, *Luxottica Group, S.p.A, et al. v. The Partnerships, et. al*, No. 22-cv-04578 (N.D. Ill. Aug. 29, 2022) in June of 2024, and *Pit Viper, LLC v. The P'Ships, et al.* No. 23-cv-11374 in September of 2024.

5. Attached hereto as **Exhibit 1** is my resume, which provides a complete list of my experience.

6. These statements are made based on the knowledge I gained from my experience working at Amazon and as Managing Partner for DTC Retail.

7. I have reviewed the pleadings and evidence in this case, including bytebyte (Def. No. 31) ("Defendant") Motion to Dismiss [82] and its supporting documents, the screenshot evidence of the infringing product which was previously filed as part of Exhibit 2 [15] to the Declaration of Vance Lommen [14], Defendant's jurisdictional discovery responses and documents, the order confirmation for the infringing product, and e-mails that Pit Viper, LLC's ("Plaintiff") counsel received regarding the infringing product order. Additionally, I have done my own independent review of the Defendant's Amazon seller's page, product listings, and marketing.

8. International sellers, particularly those based in China, represent a significant portion of the Amazon.com seller base. These sellers choose to sell on Amazon.com due to Amazon's over 150 million Prime members and 230 million active customers.[1] Amazon represents about 40% of total e-commerce sales and Amazon is one of the largest overall retailers in the United States. For reference, Amazon's online sales in 2022 were 372 billion dollars, while Walmart's online sales were 47 billion (8 times as large). Amazon.com is the online gorilla in the room in the

---

[1] https://amzscout.net/blog/amazon-statistics/.

United States and dwarfs any other online marketplaces, retailers, or websites in size of customer base. Access to this customer base is a leading reason why sellers, both international and domestic, choose to sell on Amazon versus another platform and/or in addition to their own website. Other marketplaces such as Walmart, eBay, or Wayfair are relatively tiny. Other retailers such as Home Depot, Target, or Bed Bath and Beyond are also relatively tiny, and additionally have strict supplier agreements and listing requirements which make it difficult for sellers to list products and open up a shop. Choosing to sell on Amazon.com has given Defendant access to this large customer base that it would not be able to easily reach on its own.

9. Sellers like Defendant also capitalize on the fact that Amazon is consistently rated as one of the most valuable and trustworthy brands in the United States. Sellers benefit from this because when customers shop on Amazon and purchase products, they know they are protected by Amazon's customer service and return policies. This increases confidence in a seller's products, improves conversion, and increases sales. Essentially, when customers shop on Amazon, they feel confident that they are going to get authentic products and that they are going to receive them quickly. Customers also trust that their personal and credit card information is secure and that they will not receive unwanted spam e-mails from sellers after the order is complete. In practice, this reflects in that customers are much more likely to buy a product from Amazon rather than from a website they have never heard of. Conversion on Amazon is typically five to ten times of what is seen on a brand's own website. Without selling on Amazon, it is very hard for an unknown or new brand to get to market penetration, and would be even harder for an international brand or seller without domestic know-how. Amazon

removes this hurdle with customer trust that has built up over the last twenty-five years, and sellers get to leverage this customer trust when selling through Amazon.

10. Amazon operates a number of marketplaces such as .com, .ca, .co.uk, .com.au, .de, .co.jp that specifically target domestic customers in each of the respective locales and offers a local virtual shelf. While all sites can technically be accessed by customers worldwide, the local sites give customers benefits such as fast load times through domestic servers, fast shipping, increased selection, and local languages and currency options. As a practical matter, users of different countries will by default be taken to the local Amazon marketplace corresponding to their country. Sellers choose to sign up for the specific Amazon website of their choosing so that they can target the applicable market's customers.

11. For example, sellers sign up for Amazon.com (rather than Amazon.co.uk or Amazon.co.jp) to specifically target U.S. customers, whereas if sellers want to target customers in the United Kingdom, they would sign up for Amazon.co.uk (rather than Amazon.com). Based on my review of the Exhibits as well as Defendant's current seller storefront, seller "bytebyte" has signed up and listed products on Amazon.com. This can be seen based on the URL of its product detail pages that include "amazon.com" as the domain rather than amazon.com.au or amazon.com.mx or amazon.co.uk for Australia, Mexico, or the United Kingdom, respectively.

12. When an Amazon seller creates an account to target a specific market, they affirmatively select and customize the locations that they will service and ship products to. Generally, products listed on a respective marketplace (like Amazon.ca), particularly seller fulfilled products, will not be available for purchase by a consumer in a different region (like in the United Kingdom) unless the seller affirmatively agrees to international shipping. This is not something that happens by default or under Amazon's control if the product is not fulfilled by Amazon.

13. Amazon provides services and programs that make the sales process easier for the seller, and particularly for international sellers. This includes listing creation, marketing, advertising, fulfillment, payment processing, and customer service. This helps reduce the costs and effort needed to sell online and reach target customers. By using Amazon, sellers can also decide to use additional marketing mechanisms to target United States consumers, including: coupons, deals, and sponsored advertising. Using these marketing mechanisms is an affirmative step that sellers must take, and not something Amazon does automatically. To use these marketing levers, sellers must actively create campaigns and deals in the Amazon system, which involves going through workflows where items to market are chosen, targeting and audiences are selected, and deals and/or promotions are entered. Additionally, sellers are required to set budgets, and time frames of each initiative. Amazon then charges sellers for these various marketing initiatives.

14. Defendant used these marketing mechanisms to target its products to the United States market, including Illinois. Defendant's responsive document identified by Bates No. PV10000430 is a spreadsheet of Defendant's various transactional records, including orders, refunds, marketing expenses, and types of marketing mechanisms, etc. This document shows Defendant created coupon campaigns and additional targeted advertising to drive sales to products on its Amazon.com store. It also shows that Defendant made over 400 sales to Illinois consumers.

15. I determined that the products sold by Defendant are both seller fulfilled and fulfilled by Amazon, because products that are fulfilled by Amazon include that information on the product detail page. The listings for the infringing product identified by ASIN B0CFDHC1L6 specifically states "Ships from bytebyte" which indicated that this is a seller fulfilled listing. *See* Figure 1. Based on the Amazon.com sales records that Defendant produced, which is a

spreadsheet identified by Bates No. PV10000430, Defendant's products are both seller fulfilled and fulfilled by Amazon. Fulfilled by Amazon means that the Defendant creates the product listings, provides inventory for Amazon to store at its warehouses that are located across the country, including Illinois, and Amazon will pack and ship the order after it is placed.



*Figure1*

16. As further explained Paragraph 20(b), when creating the listing for the infringing product, Defendant chose to make this product available to Illinois consumers and agreed to sell and

6

ship this product into Illinois. Additionally, based on the screenshot evidence previously submitted as Exhibit 2 [15] to the Declaration of Vance Lommen [14], Defendant targeted customers in Illinois with other products in their catalog. *See* Figure 2.



*Figure 2*

17. Based on my knowledge and experience and after reviewing the facts of this case, Defendant, through its Amazon.com store, targets its business activities into the United States; specifically, the regions of the United States that Defendant affirmatively agreed to service while it was setting up its Amazon.com store, which includes Illinois.

18. As a marketplace facilitator, Amazon also collects and remits taxes on behalf of sellers for each state,[2] which would be unfeasible for small sellers to do individually on their own. As a seller

---

[2] https://www.amazon.com/gp/help/customer/display.html?nodeId=202211260.

on Amazon, with over $100,000 in sales in the United States, a portion of Defendant's sales would have been generated in Illinois, and Defendant would have had sales tax collected and remitted to Illinois by Amazon on its behalf.

19. Setting up a store on Amazon.com, and then creating a product listing, requires sellers to affirmatively take a number of distinct steps and actions. After the account is set up, sellers would need to take further steps to create a product listing, and to agree to accept and then ship an order.

20. In this regard, Defendant:

    a. Signed up for and opened an Amazon.com account (and not Amazon.co.uk, Amazon.sg, Amazon.de, etc., storefronts). This is evidenced by their storefront being on ".com" versus another marketplace. To do this, Defendant would have needed to complete a sign-up workflow on Amazon where it provided business and identity information and verification such as entity profile, tax information, and shipping settings and accepted Amazon's Terms of Service and Business Agreements. In my experience helping dozens of sellers sign up for accounts, this process typically takes about an hour, plus an additional day or two for various identity verifications.

    b. Created a product listing in the U.S. marketplace by providing product information to the Amazon system ranging from basic product data (SKU, product name, price), to listing copy, images, and meta data. There are dozens of pieces of information that need to be provided, and hundreds of additional optional fields. *See* Figure 3.



*Figure 3*

Sellers must also choose a shipping template to assign each listing/ASIN for seller fulfilled items. As part of setting up these templates, sellers are required to select their shipping speeds, as well as the countries and states that they can ship to. *See* Figure 4 and 5. Given that Defendant sold products to Illinois, it would have had to select Illinois as a shippable state.



*Figure 4*

*Figure 5*

10

c. Developed the product images and entered the product information in English (not in another language). It is common for sellers to create listings in the local language of the marketplace where the listing is created for the benefit of the customers they are targeting. Thus, an international seller creating a page on Amazon.com would enter the product information in English.

d. Loaded inventory for seller fulfilled products—for Amazon to show an offer as buyable to customers, inventory must be actively available on the product. A product would not be searchable or purchasable for consumers unless Defendant confirmed it had inventory to fulfill the orders. Therefore, Defendant would have needed to confirm that it had inventory availability of at least 1 unit of the infringing product in order for it to have been ordered. This is an active step as Amazon's default is "0" inventory for a new product listing.

e. Created shipping plans and shipped inventory for products fulfilled by Amazon ("FBA"). This would include choosing and selecting items to ship to FBA warehouses, telling Amazon how many units would be shipped in for each of the items, determining and entering packing information including dimensions and weights of the boxes, printing shipping labels from Amazon to affix to the products and boxes, and physically shipping the goods via a carrier to Amazon.

f. Reviewed any placed seller fulfilled order, which would show where the order was placed to. When Defendant received the order for the infringing product, it would have seen that the order was placed to 300 South Wacker Drive, Chicago, IL, 60606. *See* Figures 6, 7, and 8 for examples of the order page where customer address info is available under the "Ship To."



*Figure 6*



*Figure 7*



*Figure 8*

21. Based on the evidence I reviewed, my knowledge of Amazon's internal operations, and seller account operations, it is undisputable that Defendant targeted its business transactions to the United States, and every region it elected to serve, which includes Illinois.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this  4th  day of October 2024 at Grand Rapids, Michigan, 49506.

_Daven Brodess_
Daven Brodess